IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SSL SERVICES, LLC, | § § | |
| Plaintiff, | § § | Case No. 2:15-cv-00433-JRG |
| v. | § § | |
| CISCO SYSTEMS,INC., | § § | |
| Defendant. | § § § § | |

**PLAINTIFF SSL SERVICES, LLC'S OPPOSITION TO DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO COMPEL AMENDED INFRINGEMENT CONTENTIONS AND TO MODIFY THE DOCKET CONTROL NUMBER**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT .........................................................................................................4

I. SSL'S 467-PAGE CONTENTIONS PROVIDE THE REQUISITE "ADEQUATE NOTICE" OF ITS INFRINGEMENT THEORIES ............4

II. CISCO'S ARGUMENTS IMPERMISSIBLY RELATE TO ITS SUBSTANTIVE POSITIONS ABOUT THE SCOPE AND MEANING OF THE '011 CLAIMS AND NON-INFRINGEMENT.............................7

III. PER THIS COURT'S ORDER, SSL IN THE ALTERNATIVE MAY SUPPLEMENT ITS CONTENTIONS UPON REVIEWING CISCO'S SOURCE CODE EVIDENCE ...................................................................11

IV. THE CASE SCHEDULE SHOULD NOT BE EXTENDED, AS CISCO HAS KNOWN ALL ALONG THIS IS A SOFTWARE CASE AND IT STILL AGREED TO ALL DEADLINES ADOPTED BY THIS COURT ..................................................................................................13

CONCLUSION.................................................................................................14

## TABLE OF AUTHORITIES

Cases

*Am. Video Graphics, L.P. v. Elec. Arts, Inc.*,
   359 F. Supp. 2d 558 (E.D. Tex. 2005) .................................................................. 8, 10, 11, 12

*Balsam Coffee Solutions, Inc. v. Folders Coffee Co..,*
   2009 U.S. Dist. LEXIS 114794 (E.D. Tex. Dec. 9, 2009) ........................................................ 5

*Computer Acceleration Corp. v. Microsoft Corp.,*
   503 F. Supp. 2d 819 (E.D. Tex. 2007) ................................................................................ 4, 6

*Connectel, LLC. v. Cisco Systems, Inc.,*
   391 F. Supp. 2d 526 (E.D. Tex. 2005) ................................................................................ 4, 6

*EON Corp. IP Holdings, LLC v. Sensus USA Inc.,*
   2010 U.S. Dist. LEXIS 4973 (E.D. Tex. Jan. 21, 2010) .................................................. passim

*Global Sessions LP v. Travelocity.com LP,*
   2009 U.S. Dist. LEXIS 73153 (E.D. Tex. May 25, 2012) ......................................................... 5

*Honeywell Int'l, Inc. v. Acer America Corp.*,
   655 F. Supp. 2d 650 (E.D. Tex. 2009) .................................................................................... 5

*Linex Techs. Inc. v. Belkin Int'l, Inc*.,
   628 F. Supp. 2d 703 (E.D Tex. 2008) ............................................................................. passim

*Orion IP, LLC v. Staples, Inc*.,
   407 F. Supp. 2d 815 (E.D. Tex. 2006) ............................................................................ 10, 11

*Realtime Data, LLC v. Packeteer, Inc.*,
   2009 U.S. Dist. LEXIS 122434 (E.D. Tex. July 20, 2009) ....................................................... 5

*Realtime Data, LLC v. Packeteer, Inc.*,
   2009 U.S. Dist. LEXIS 73217 (E.D. Tex. Aug. 18, 2009) ........................................................ 5

*ROY-G-BIV Corp. v. ABB, Ltd*.,
   63 F. Supp. 3d 690 (E.D. Tex. 2014) ...................................................................................... 5

*Samsung SDI Co. v. Matsushita Elc. Indus. Co.*,
   2006 U.S. Dist. LEXIS 97060 (C.D. Cal. June 5, 2006) ........................................................... 5

*STMicroelectronics, Inc. v. Motorola, Inc*.,
   308 F. Supp. 2d 754 (E.D. Tex. 2004) ............................................................................ 5, 6, 8

Rules

Local Patent Rule 3-1 ................................................................................2, 3, 4, 5, 6, 7, 11, 12, 13

Local Patent Rule 3-4 ..........................................................................................................14

Local Patent Rule 3-6 ............................................................................................................7

Fed. R. Civ. P. 1 ....................................................................................................................6

**INTRODUCTION**

This case involves the same patent-in-suit—the '011 patent—that this Court recently found valid and infringed in the *Citrix* case. Here, SSL accuses four Cisco products of infringing three claims of the '011 patent. To detail its infringement theories, SSL provided claims charts spanning some 467 pages. These contentions cite to and quote from numerous evidentiary sources, mostly from Cisco itself, that further disclose how the accused software products meet each limitation of the asserted claims. As such, SSL's contentions provide the "adequate notice" of SSL's infringement theories that this Court's rules require.

After SSL provided its contentions in July, Cisco filed a petition for *inter partes* review at the Patent Office. And Cisco has also separately moved to transfer and to stay this case. Now, Cisco has moved to compel SSL to amend its contentions and to extend all deadlines in the case schedule by at least three months. Like Cisco's motions to transfer and stay, though, the instant motion to compel lacks merit. Indeed, Cisco bases its motion on a number of arguments on the scope and meaning of various claim terms and Cisco's non-infringement positions. Such arguments contravene this Court's prohibition on using infringement contentions as a "forum for litigation of the substantive issues."[1] After all, as Judge Love explained in *EON v. Sensus*, arguments relating to claim construction, infringement, and other substantive issues must follow baseline procedures and properly await "claim construction briefing" and "summary judgment or trial."[2]

SSL thus respectfully requests that Cisco's motion to compel be denied, and this case permitted to proceed according to the schedule that the parties previously agreed to and that the Court adopted in August.

---

[1] *E.g., EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, 2010 U.S. Dist. LEXIS 4973, at *9 (E.D. Tex. Jan. 21, 2010); *Linex Techs. Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 713 (E.D Tex. 2008).

[2] *EON Corp.*, 2010 U.S. Dist. LEXIS 4973, at *12-13.

## BACKGROUND

In early March 2015, this Court concluded SSL's successful patent litigation holding that SSL's '011 Patent was infringed by Citrix software products and was not invalid based on various invalidity challenges. In that case, this Court addressed the '011 Patent through claim construction, pretrial, trial, and post-trial briefing, resulting in thorough opinions and ultimately an affirmance on all liability and damages issues by the Federal Circuit. In late March 2015, SSL sued Defendant Cisco in this case, accusing certain software products of also infringing its '011 Patent. Among other things, SSL's asserted '011 Patent claims expressly recite a system whose computers employ "software," including particular applications, software drivers, and a "shim."

Cisco thereafter obtained SSL's consent to delay its response to SSL's complaint, which Cisco answered in mid-May 2015. A month later, Cisco filed a motion to transfer this litigation to the District of Massachusetts despite the Court's extensive prior experience addressing this same patent. Thereafter, on July 23, 2015, SSL served its infringement contentions pursuant to this Court's Patent Rule 3-1. Over the course of some 467 pages, SSL's contentions specify how the asserted claims are being infringed by four of Defendant Cisco's software products. The contentions further include links, citations to, and quotes from relevant passages in Cisco materials that help further describe how the accused products meet the particular limitation at issue.[3] They also include materials from third-party sources familiar with software, such as Microsoft. As more fully described below, the contentions also reference that the Patent and accused products both involve "software."[4]

On July 30, 2015, the parties appeared before this Court for the case scheduling conference. There the Court provided deadlines for claim construction, jury selection, mediation

---

[3] *See, e.g.*, Ex. 1, Excerpt of Appendix 1.1, Cisco AnyConnect Secure Mobility Solution Claim Chart at 1-8.

[4] *See, e.g.*, Ex. 1, Excerpt of Appendix 1.1, Cisco AnyConnect Secure Mobility Solution Claim Chart at 7, 69, 81, 123.

submissions, and scheduling and discovery orders.[5] Defendant Cisco did not object to any of these dates. Nor did Cisco raise any objection about the sufficiency of SSL's infringement contentions. Likewise, in the additional scheduling discussions that followed, Cisco agreed to all proposed deadlines for other claim-construction disclosures, the *Markman* hearing itself (February 25, 2016), amendments to pleadings, discovery, dispositive motions, pretrial filings, and jury selection (September 6, 2016). In mid-August 2015, the Court adopted these agreed-on dates in its Scheduling Order. In so doing, the Court's Order *sua sponte* adopted the provision authorizing SSL to supplement its contentions after it has received and reviewed Cisco's source code.[6]

Meantime, in early August 2015, Cisco sent a letter to SSL describing purported deficiencies with its infringement contentions. Cisco's letter complained about two claim terms and a handful of pages directed to them in SSL's contentions. In particular, Cisco complained about the disclosures as they related to two software terms, the "shim" and the software "drivers" required by the asserted '011 claims. In so doing, Cisco's letters recognized that the '011 Patent involves "software" and that, pursuant to this Court's Scheduling Order and Patent Rule 3-1(g), SSL could supplement its contentions following review of the source code that Cisco would have to produce.[7] The parties exchanged additional letters on these contentions and held a meet-and-confer about it in late September 2015. While Cisco's motion spends much time purporting to recount what SSL said at this "final meet-and-confer" that description is inaccurate and irrelevant here. But in brief, and as with its letters, SSL consistently explained to Cisco that

---

[5] D.I. 44.

[6] See D.I. 42; D.I. 44.

[7] Ex. 2, August 4, 2015 Letter from M. Gaudet to A. Fisch and B. Sigler at 2.

SSL's contentions suffice under Patent Rule 3-1 and that SSL alternatively can supplement its contentions following its review of Cisco's source code.[8]

With its motion to transfer already pending, in late September 2015, Cisco chose to file a motion to stay this litigation pending a ruling on its transfer motion.[9] Cisco also announced it has filed a petition for an *inter partes* review of the '011 Patent in the U.S. Patent Office. And on October 7, 2015, Cisco filed this motion to compel SSL to amend its contentions and to delay, by 90 days, the scheduling deadlines that Cisco had otherwise agreed to in mid-August 2015. As more fully explained below, Cisco's latest motion is devoid of merit under this Court's rules, its case law, and the record.

## ARGUMENT

### I. SSL'S 467-PAGE CONTENTIONS PROVIDE THE REQUISITE "ADEQUATE NOTICE" OF ITS INFRINGEMENT THEORIES

Cisco's motion ignores both the proper legal standard for assessing infringement contentions and the actual disclosures and evidence provided with SSL's extensive 467-page Contentions.

Rather than the substantive claim-construction and non-infringement arguments that Cisco urges on its motion to compel, this Court's patent rules simply look to whether the contentions provide "[e]nough specificity … to give an alleged infringer notice of the patentee's claims."[10] In other words, this Court's Patent Rule 3-1 requires contentions that "provide

---

[8] *See, e.g., Linex Techs. Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 706, n.4 (E.D Tex. 2008) ("Plaintiff's counsel emphasized its willingness to amend, but unequivocally stated that as the Infringement Contentions now stand, Plaintiff asserts the disclosure is sufficient under Patent Rule 3-1.").

[9] *E.g.*, D.I. 42.

[10] *E.g., Linex*, 628 F. Supp. 2d at 706; *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007) (patent disclosure rules aim to provide "all parties with adequate notice and information with which to litigate their cases"); *Connectel,* 391 F. Supp. 2d at 527-28.

defendants with notice of infringement beyond that which is provided by the mere language of the patent [claims] themselves."[11] Thus, the "Rules do not require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case."[12] Indeed, contentions do not need to "set forth a *prima facie case* of infringement and evidence in support thereof," let alone provide "the level of detail required, for example, on a motion for summary judgment on the issue of infringement."[13] This Court has also explained that evidence obtained and identified during "discovery can aid in satisfying the notice function of infringement contentions."[14] And while contentions certainly need not disclose evidence of infringement to meet this "notice" test, those contentions which do "[i]dentif[y] … evidence supporting an infringement theory may aid" and help satisfy this "notice function."[15] Importantly, these contentions rules "are to be

---

[11] *E.g.*, *Honeywell Int'l, Inc. v. Acer America Corp.*, 655 F. Supp. 2d 650, 654 (E.D. Tex. 2009) (quoting *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004)).

[12] *EON*, 2010 U.S. Dist. LEXIS 4973, at *8; *Realtime Data, LLC v. Packeteer, Inc.,* 2009 U.S. Dist. LEXIS 73217, at *8-9 (E.D. Tex. Aug. 18, 2009) (stating "[i]nfringement contentions are not intended to require a party to set forth a *prima facie* case of infringement and evidence in support thereof"); *see also Balsam Coffee Solutions Inc. v. Folgers Coffee Co.,* 2009 U.S. Dist. LEXIS 114794, at *10 n. 2 (E.D. Tex. Dec. 9, 2009) (noting "P.R. 3-1 does not require the disclosure of evidence and documents supporting infringement contentions …."); *Samsung SDI Co. v. Matsushita Elec. Indus. Co.,* 2006 U.S. Dist. LEXIS 97060, at *6 (C.D. Cal. June 5, 2006) (explaining "[t]he plaintiff is not . . . required to produce evidence of infringement . . . or to provide evidentiary support for its contentions" (quotations omitted)).

[13] *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 698-99 (E.D. Tex. 2014) (citation omitted); *Realtime Data,* 2009 U.S. Dist. LEXIS 73217, at *28.

[14] *EON*, 2010 U.S. Dist. LEXIS 4973, at *8; *Realtime Data,* 2009 U.S. Dist. LEXIS 122434, at *8 n. 3 (explaining that evidence obtained during discovery can help meet the notice function of contentions).

[15] *Realtime Data,* 2009 U.S. Dist. LEXIS 122434, at *8 n. 3; *EON*, 2010 U.S. Dist. LEXIS 4973, at *11; *Realtime Data,* 2009 U.S. Dist. LEXIS 73217, at *27-28 (quoting *Linex,* 628 F. Supp. 2d at 713); *Global Sessions LP v. Travelocity.com LP*, 2012 U.S. Dist. LEXIS 73153, at *9-10 (E.D. Tex. May 25, 2012).

'construed and administered to secure the just, speedy, and inexpensive determination of every action.'"[16]

SSL's infringement contentions satisfy the "notice" required by this Court's Patent Rule 3-1. Indeed, this is *not* a case where a plaintiff has taken the "shotgun" approach of accusing "hundreds of different products" of infringing "hundreds of [patent] claims," or has otherwise provided a mere handful of pages to conclusorily describe its contentions, or tucked away its infringement theory in a footnote.[17] Quite the opposite, after reviewing all the publicly available information it knew of, SSL's contentions carefully identify four accused software products by Cisco as infringing three different claims in SSL's '011 Patent. And for these handful of asserted '011 claims and accused software products, SSL's contentions set forth infringement details, on a limitation-by-limitation basis, over the course of some 467 pages.

On top of that, SSL's contentions specify numerous evidentiary sources and materials, primarily from Cisco's own manuals and guides, that further set forth how Cisco's particular four software products are infringing SSL's specific three asserted claims. On the two particular software claim terms that Cisco attempts to isolate—the "shim" and the software drivers recited in claim 2—SSL's contentions state, for example, that the Cisco AnyConnect Secure Mobility Client implements cryptographic protocols by using a shim that is arranged to intercept function calls and requests for service sent by an applications program.[18] As previously explained to

---

[16] *Computer Acceleration Corp.*, 503 F. Supp. 2d at 821 (quoting Rule 1 of Fed. R. Civ. P.).

[17] *Linex*, 628 F. Supp. 2d at 711; *Connectel* 527 (tucking reference to purportedly accused products in footnote to contentions); *STMicro* (hundreds of products infringing hundreds of claims); *Computer Acceleration Corp.*, 503 F. Supp. 2d at 823 (nine total pages of contentions).

[18] *See, e.g.*, Ex. 1, Excerpt of Appendix 1.1, Cisco AnyConnect Secure Mobility Solution Claim Chart at 63, 123.

Cisco, SSL's extensive contentions, at Appendix 1.1, also cite several Cisco and third-party sources showing that Cisco software uses a shim.[19] Similarly, as to the software drivers recited in claim 2, the contentions at Appendix 1.1 further state that the Cisco client computer uses drivers to communicate through a client computer's networking hardware.[20] This theory of infringement thus encompasses drivers that are installed as part of the Cisco software installation and/or drivers that already reside on the client computer. And ultimately, as permitted by this Court's Patent Rules generally and by this Court's Order in this case specifically, SSL may amend its contentions as it learns of additional "technical" details during discovery, including when it reviews Cisco's source code.[21]

In short, SSL has met the "notice" function based on publicly available information, as its contentions amply show. Cisco's motion should accordingly be denied.

## II. CISCO'S ARGUMENTS IMPERMISSIBLY RELATE TO ITS SUBSTANTIVE POSITIONS ABOUT THE SCOPE AND MEANING OF THE '011 CLAIMS AND NON-INFRINGEMENT

Cisco's arguments to the contrary rely on several legal and factual errors. Foremost, Cisco bases its motion on conclusions relating to claim construction; the meaning of the '011 claims in view of the patent's reexamination history at the Patent Office; and Cisco's "case dispositive" assertions of non-infringement.[22] That is an error repeatedly rebuffed by this Court. As Judge Love explained in *EON v. Sensus*, infringement "contentions are not meant to provide

---

[19] *See, e.g.*, Ex. 1, Excerpt of Appendix 1.1, Cisco AnyConnect Secure Mobility Solution Claim Chart at 63-68, 123-128.

[20] *See, e.g.*, Ex. 1, Excerpt of Appendix 1.1, Cisco AnyConnect Secure Mobility Solution Claim Chart at 57-62, 75-80.

[21] *See, e.g.*, P.R. 3-1(g); P.R. 3-6; D.I. 42 (scheduling order *sua sponte* permitting SSL to amend contentions upon review of Cisco's source code).

[22] *See* Cisco MTC 3-5, 8-12.

a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process."[23] Accordingly, objections to contentions that delve into non-infringement positions or otherwise "raise substantive issues … are not properly addressed by infringement contentions."[24] Such arguments relating to the merits or the proof thereof are "question[s] for summary judgment or trial."[25] Likewise, objections to the sufficiency of a party's contentions that are "directed toward claim construction positions" and "the meaning of" the claims "are properly reserved for claim construction briefing" and subject to the claim-construction disclosures set by this Court's Rules and scheduling orders.[26]

Cisco's motion ignores these rules against using substantive arguments to justify its procedural challenge to a plaintiff's infringement contentions. Indeed, Cisco premises its motion to compel on the "case dispositive" notion that it does not infringe, arguing that the "shim" identified in its accused software products "could not have 'caused' the generation of the session key in the prior art, because the session key was already generated by the time the shim came into play."[27] Similarly, addressing both claim construction and its non-infringement theory, Cisco expounds on the argument that SSL purportedly "made … to the Patent Office in order to

---

[23] *E.g., EON*, 2010 U.S. Dist. LEXIS 4973, at *9; *Linex,* 628 F. Supp. 2d at 713 ("Plaintiff is merely required to outline in detail its specific Infringement Contentions regarding particularly Accused Products. As noted above, the Infringement Contentions are not intended to be a forum for adjudicating the merits of the plaintiff's contentions."); *STMicroelectronics,* 308 F. Supp. 2d at 755; *see also Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) (agreeing "contentions are intended to streamline the discovery process rather than provide a forum for litigation of the substantive issues and … the Rules[] … allow parties to supplement their contentions when technical information is produced during discovery").

[24] *EON Corp.*, 2010 U.S. Dist. LEXIS 4973, at *12-13.

[25] *Id.*

[26] *Id.*

[27] *E.g.*, Cisco MTC 8 & 11; *accord id.* at 3, 4, 5, 9.

get the '011 Patent through the reexamination," indicating that this too shows Cisco is not liable for infringement and SSL should not have "sued" it in the first place.[28] And it emphasizes that these "shim" and "driver" software limitations are "not just an afterthought," further delving into arguments about the "very bases" of why "the Patent Office permitted the '011 Patent to survive reexamination" and how SSL has "conflated" the '011 claim terms relating to the "shim," the "applications," and the "lower level communications drivers."[29]

This Court bars such merits-based arguments, as detailed above. To be certain, SSL has a good-faith basis for asserting Cisco's infringement—and fully intends and expects to prove as much at trial. But pursuant to this Court's case law, Cisco's arguments impermissibly delve into or invite analyses about what the asserted claims do and do not require, and whether the accused products do or do not infringe them. Those are all questions controlled by the Court's scheduling order for claim-construction disclosures and "properly reserved for claim construction briefing" and "for summary judgment or trial."[30]

Cisco also advances a number of other arguments, which are each incorrect. First, Cisco claims the law requires that a plaintiff's contentions "include all relevant facts known to plaintiff."[31] But nothing in this Court's Patent Rules or the cited case law recites such an all-encompassing requirement, which is otherwise contrary to the above-quoted case law requiring only "adequate notice" for infringement contentions. Second, Cisco repeatedly complains that SSL's contentions cite "third-party" materials to help show infringement, suggesting that

---

[28] *See id.* 10-11.

[29] *Id.* 10-12.

[30] *See, e.g., EON Corp.*, 2010 U.S. Dist. LEXIS 4973, at *12-13.

[31] Cisco MTC 14.

evidence from third parties cannot count toward the sufficiency of the disclosure.[32] But as explained above, a plaintiff need not cite any evidence at all to support its contentions. Further, Cisco cites no rule or case law prohibiting use of such third-party evidence, and this Court's case law recognizes that a party may use such "third-party" evidence.[33] Third, Cisco repeatedly professes ignorance and "confus[ion]" over Plaintiff SSL's infringement theories.[34] But this Court has recognized that defendants who move to compel a plaintiff to amend its contentions routinely "claim[] [they were] left to guess what would be accused," and that such defendants "seek to use [their] own alleged lack of clarification to its advantage at this stage of the proceeding."[35] Fourth, Cisco further relies on *EON v. Sensus* to argue that SSL's citation of evidence does not help its "egregious" contentions.[36] But *EON* does not conflict with this Court's other cases holding that the identification of supporting evidence, while unnecessary, may nevertheless help satisfy the "notice" obligations served by infringement contentions.[37] Indeed, *EON* itself merely noted that citing or quoting evidence in contentions does not automatically or "necessarily" so "advise" or meet this notice function.[38] Moreover, in *EON*, the

---

[32] Cisco MTC 2, 10, & n.9.

[33] *See generally Linex*, 628 F. Supp. 2d at 709, n.6 (describing information used to support party's infringement contentions, including third-party information that plaintiff would "need to … subpoena").

[34] *E.g.*, Cisco MTC 11.

[35] *See, e.g., Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 818 (E.D. Tex. 2006); *Am. Video Graphics*, 359 F. Supp. 2d at 560 (rejecting arguments to compel amended contentions even though defendants claimed the missing information was "vital" and that plaintiff's contentions kept them "ignorant of the factual basis for [its] infringement accusations").

[36] *See* Cisco MTC 10; *EON*, 2010 U.S. Dist. LEXIS 4973.

[37] *See, e.g.*, cases cited in notes 14-15, *supra*.

[38] *See EON*, 2010 U.S. Dist. LEXIS 4973, at *11.

Court twice said and held that the contentions there were "deficient because they fail[ed] to identify each accused instrumentality."[39] Cisco does not argue here that the contentions here lack this.

### III. PER THIS COURT'S ORDER, SSL IN THE ALTERNATIVE MAY SUPPLEMENT ITS CONTENTIONS UPON REVIEWING CISCO'S SOURCE CODE EVIDENCE

At minimum, Cisco itself does not seriously contest that SSL can amend its contentions to include additional information once Cisco produces its source code. After all, that is the "software" law of this Court. Indeed, "in software cases, the Court has recognized the pragmatic limitation on detailed [infringement contentions] when plaintiffs do not have the necessary access to non-public software, which is needed to make detailed infringement contentions."[40] As this Court has repeatedly explained:

> Software cases present unique challenges for the parties and the courts because, prior to discovery, plaintiffs usually only have access to the manifestation of the defendants' allegedly infringing source code and not the code itself. From this manifestation, plaintiffs must somehow divine whether the defendants' code infringes. Although defendants vigorously and rightly guard their source code, until plaintiffs have access to it, plaintiffs are typically unable to give highly specified infringement contentions.[41]

Therefore, and consistent with the new P.R. 3-1(g) that Cisco refers to and this Court's Scheduling Order, this Court's case law has long accorded a plaintiff in a software case the

---

[39] *Id.* at *9-11.

[40] *Orion IP*, 407 F. Supp. 2d at 817.

[41] *Am. Video Graphics*, 359 F. Supp. 2d at 560; *accord Linex*, 628 F. Supp. 2d at 709, n.6 ("To the extent that proprietary firmware or software used in any Accused Product corresponds to particular claim limitations, Plaintiff may be currently unable to specifically delineate that portion of the Infringement Contentions"); *Orion IP, LLC v. Staples, Inc.,* 407 F.Supp.2d 815, 817 [*824] (E.D. Tex. 2006) ("In software cases, the Court has recognized the pragmatic limitation on detailed [infringement contentions] when plaintiffs do not have the necessary access to non-public software, which is needed to make detailed infringement contentions.").

opportunity to supplement its contentions once it has reviewed the defendant's source code.[42] Thus, as this is indisputably a "software case" and as Cisco's own arguments indisputably focus on software claim limitations, SSL alternatively may amend its contentions upon review of Cisco's source code.[43]

Citing *Linex*, Cisco nevertheless claims that this Court permits amendments in software cases "only where" the plaintiff had already served "detailed infringement contentions … based on the plaintiff's pre-suit diligence"—and that SSL's contentions do not meet this requirement.[44] But first, the "only where" qualifier noted by Cisco does not appear in *Linex* or other cited cases; instead, it appears Cisco only added it in its motion. Second, this Court's other case law, as described above, does not impose these various threshold requirements either. Third, the express terms of this Court's Order and Patent Rule 3-1(g) do not impose such a threshold requirement, as Cisco's own motion recognizes.[45] Fourth, SSL's 467-page contentions in any event easily meet Cisco's argued-for requirement, and indeed go beyond what the Patent Rules otherwise require by citing and quoting numerous Cisco sources and third-party sources (such as those from Microsoft) that further detail how Cisco's accused software products are infringing each of the asserted claims. And fifth, the contrast between the extensive disclosures in SSL's contentions and those in *Linex* highlight the weaknesses with Cisco's arguments. Indeed, in that

---

[42] *See, e.g.*, *Am. Video Graphics*, 359 F. Supp. 2d at 561 (denying motion to compel amended contentions and otherwise ordering plaintiff to supplement its 3-1(c) charts within 30 days of defendant depositing its source code into an escrow account for review).

[43] *E.g., id.*; P.R. 3-1(g); D.I. 42 (Court's scheduling order authorizing amended contentions upon review of source code). To be sure, the Patent Rule 3-1(g) quoted by Cisco compels this same conclusion. Be that as it may, it may bear noting that the Court's web site does not currently list P.R. 3-1(g) as a District Patent Rule. *See* http://www.txed.uscourts.gov/page1.shtml?location=rules:local (last visited Oct. 25, 2015).

[44] *See* Cisco MTC 14 (citing *Linex*, 628 F. Supp. 2d at 712).

[45] D.I. 42; Cisco MTC 6, n.7 ("P.R. 3-1(g) provides that '[i]f a party claiming patent infringement asserts that a claim element is a software limitation, the party need not comply with P.R. 3-1 for those claim elements until 30 days after source code for each Accused Instrumentality is produced by the opposing party.'").

case, the plaintiff's contentions did not cite to any particular feature in the accused products or even to the accused products at all; instead it relied only on a particular industry standard to chart its allegations as to the various claim limitations.[46] Accordingly, under this Court's law, SSL in the alternative has the right to supplement its contentions.

### IV. THE CASE SCHEDULE SHOULD NOT BE EXTENDED, AS CISCO HAS KNOWN ALL ALONG THIS IS A SOFTWARE CASE AND IT STILL AGREED TO ALL DEADLINES ADOPTED BY THIS COURT

Last, Cisco asks yet again via the instant motion to delay this case, despite the fact that Cisco had earlier agreed to all scheduling deadlines for discovery, claim construction, and trial. Cisco bases this argument on the assertion that it was not aware that this was a software case until the present dispute arose. For three related reasons, this is incorrect and the agreed-on litigation schedule adopted by the Court should hold.

First, in receiving SSL's complaint in March 2015, Cisco knew more than six months ago that this was a "software" case. After all, the claims of the '011 Patent expressly recite "software," "drivers," "shim," and other such limitations. Likewise, in July 2015, SSL served its 467-page infringement contentions that disclosed the asserted claims and their respective "software" limitations, and indicated further that this was indeed a "software" litigation.[47] And this Court itself *sua sponte* incorporated the requirements of P.R. 3-1(g) relating to software into its scheduling order, recognizing as well that this is a "software case" amenable to the different contentions standards set forth by District rule and case law. Second, as a regular litigant in this District, Cisco was aware of this Court's established rule recognizing that software cases "present unique challenges" and allowing the plaintiff to review the defendant's source code and supplement if necessary. Indeed, Cisco on its own specifically raised this rule in correspondence

---

[46] *Linex*, 628 F. Supp. 2d at 707-08.

[47] *See, e.g.*, Ex. 1, Excerpt of Appendix 1.1, Cisco AnyConnect Secure Mobility Solution Claim Chart at 7, 69, 81, 123.


to SSL. Third, Cisco had never raised any dispute about proposed scheduling dates to this Court. To the contrary, Cisco agreed to these dates without dispute at both the July 30, 2015, scheduling conference, and in the discussions culminating in this Court's entry of the parties' agreed scheduling orders in mid-August 2015.[48]

## CONCLUSION

Like its other motions, Cisco brought the instant motion for one reason: to forestall a proper adjudication of this case on the merits. After all, the '011 Patent has been fully vetted in this Court from claim construction through pretrial, trial, post-trial, and on appeal at the Federal Circuit, resulting in a multi-million dollar judgment of infringement and rejection of the array of non-infringement and invalidity arguments raised by the *Citrix* defendants. And like its prior motions, the present motion lacks substantive merit. Indeed, Cisco's motion to compel, the latest in its litany of motions and requests to delay the case, should be denied.

---

[48] Cisco also urges SSL is sleeping on its rights to review its source code and supplement its contentions, stating it made its "source code available to SSL on September 30, 2015" under P.R. 3-4 and that SSL's right to amend its contentions "will lapse on October 12, 2015. (Cisco MTC 14-15.) As a straight legal matter, Cisco's argument is incorrect because this Court's Order specified both that a party has to "produce[]" the source code at issue and that the reviewing party may provide its contentions on the "software limitations" at issue 30 days after the production of this source code. Cisco has neither "produced" its source code nor afforded 30 days from the September 30 date that it cites. As a matter of context, Cisco has been arguing in a letter-writing campaign since early August that SSL's contentions are deficient and SSL needs to supplement them accordingly. In none of those letters did Cisco offer to have SSL review its source code so that the parties could proceed apace pursuant to the Court's agreed-on litigation schedule. By September 30, moreover, Cisco had already filed two procedural motions to transfer or stay this litigation. And September 30, in any event, was a mere five business days before Cisco filed the instant motion to compel. Thus, Cisco's trumped-up outrage at SSL for not racing off to review its source code in the midst of a dispute on this very issue is belied by the timeline, the record, and common sense.

- 15 -

Date: October 26, 2015                    Respectfully submitted,

   /s/ *Alan M. Fisch*
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler (*pro hac vice*)
*bill.sigler@fischllp.com*
Jennifer K. Robinson (*pro hac vice*)
*jennifer.robinson@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
Tel: (202) 362-3500

David M. Saunders (*pro hac vice*)
*david.saunders@fischllp.com*
Desmond Jui (*pro hac vice*)
*desmond.jui@fischllp.com*
FISCH SIGLER LLP
96 North Third Street
Suite 260
San Jose, CA 95112
Tel: (650) 362-8200

*Attorneys for SSL Services, LLC*

## CERTIFICATE OF SERVICE

      I hereby certify that on October 26, 2015, the foregoing document was filed electronically under seal in compliance with Local Rule CV-5(a) and served through the Court's ECF system upon counsel of record.

By: <u>*/s/ Alan M. Fisch*</u>
     Alan M. Fisch