IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SSL SERVICES, LLC, | § | |
| v. | § | |
| | § | Case No. 2:15-cv-00433-JRG-RSP |
| CISCO SYSTEMS, INC. | § | |
| | § | |

**MEMORANDUM ORDER**

Before the Court is a Motion to Transfer Venue to the District of Massachusetts filed by Defendant Cisco Systems, Inc. ("Cisco"). (Dkt. No. 23; "Motion to Transfer"). Also before the Court is Cisco's Motion to Compel Amended Infringement Contentions and to Modify the Docket Control Order. (Dkt. No. 51; "Motion to Compel").

**I. BACKGROUND**

This is a patent infringement case brought by SSL Services, LLC ("SSL") against Cisco, alleging infringement of U.S. Patent No. 6,158,011 (the "'011 Patent"). The '011 Patent is entitled "Multi-Access Virtual Private Network" and relates to methods and systems for establishing secured communications over an open network between different communications applications. On July 23, 2015 SSL served Cisco with Infringement Contentions, per Pat. L. R. 3-1, accusing Cisco's AnyConnect Secure Mobility Solution, AnyConnect VPN, Secure Remote Access Solution, and SSL VPN products of infringement. (Dkt. No. 51-4 at 3).[1]

SSL is a Delaware LLC located in Potomac, Maryland. (Dkt. No. 23 at 1). Cisco is a California corporation headquartered in San Jose, California. (*Id.*). Cisco's website lists offices

---
[1] Citations to the docket use CM/ECF page numbers.

across the United States;[2] two of the listed offices are located in Massachusetts and five are located in Texas.

In 2008, SSL filed a lawsuit in this Court against Citrix Systems, Inc. ("Citrix") alleging infringement of, *inter alia*, the '011 Patent. *SSL Services, Inc. v. Citrix Systems, Inc.*, No. 2:08-cv-00158 (E.D. Tex.) ("Citrix Litigation"). The Citrix Litigation proceeded through claim construction, pretrial, trial, and post-trial motion practice before Judge Ward and Judge Gilstrap (also the Judge assigned to this case) in the Eastern District of Texas. *See* (Dkt. No. 23 at 9). The judgment was appealed to the Court of Appeals for the Federal Circuit, where it was affirmed. *See* Citrix Litigation Dkt. No. 334. The original complaint in the Citrix Litigation was filed April 11, 2008, and the Citrix Litigation concluded March 11, 2015, just two weeks before this case was filed.

## II. MOTION TO TRANSFER VENUE

Cisco asserts this case should be transferred to the District of Massachusetts per 28 U.S.C. § 1404(a). (Dkt. No. 23). SSL opposes transfer. After considering the evidence and weighing the pertinent factors, the Court finds that transfer is not warranted in this case.

### A. APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first step in a Court's transfer analysis is deciding "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

---

[2] *See* http://www.cisco.com/web/siteassets/contacts/offices/us.html

If that threshold is met, the Court then analyzes public and private factors relating to the convenience of parties and witnesses and the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Although the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

Timely motions to transfer venue should be "should [be given] a top priority in the handling of [a case]" and "are to be decided based on 'the situation which existed when suit was

instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Doc. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

**B. ANALYSIS**

    **1. Proper Venue**

Neither party disputes that both the Eastern District of Texas and the District of Massachusetts are proper venues. *See* (Dkt. No. 23 at 11).

    **2. Private Interest Factors**

        *a. Relative Ease of Access to Sources of Proof*

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted). As Cisco's brief correctly states, "the physical location of documents and evidence remains an important factor despite advances in copying and electronic data transfer technologies" (Dkt. No. 23 at 12); *see In re Genentech*, 566 F.3d at 1345 (ignoring the physical location of evidence is improper because it "would render this factor superfluous").

Cisco represents that some documents related to the accused products "are maintained locally" in Cisco's Massachusetts offices. To support this contention, Cisco cites the declarations of Product Manager Peter Davis (Dkt. No. 23-15; "Davis Dec."), Engineering Manager Scott Goldman (Dkt. No. 23-16; "Goldman Dec."), and Legal Systems Director Daniel Black (Dkt. No. 23-14; "Black Dec."). (Dkt. No. 23 at 12). However, none of these declarations state that <u>any</u> relevant documents are actually located in Massachusetts. Instead, both the Davis and Goldman declarations state that Massachusetts-based Cisco employees "regularly save documents to and

retrieve documents from Cisco's central repository known as EDCS, which can be accessed from Cisco's offices in Massachusetts."[3] Davis Dec. at ¶ 8; Goldman Dec. at ¶ 10; *see also* (Dkt. No. 23-17 at ¶ 7). The Black Declaration clarifies that "[t]he central repository for Cisco's technical documents, a repository called 'EDCS,' is stored on servers located at or near Cisco's office in San Jose, California." Black Dec. at ¶ 6. The Black Declaration also states:

> Cisco also has other servers for other Cisco documents and databases in other locations in the United States, including Research Triangle Park (Durham), North Carolina, Allen, Texas and Richardson, Texas. These servers are used to store specific types of Cisco databases and documents, regardless of where those particular documents are created or their author resides. For instance, a database called "Teradata" that contains revenue information is located in Richardson, Texas. Human resources documents, contracts, and other non-technical documents are stored in "Documentum," which is hosted on servers in Allen, Texas. The servers located in Research Triangle Park are used for backup and data replication of various data sources.

*Id.* at ¶ 7. The data stored on these servers can be accessed "in any of Cisco's offices." *Id.* at ¶ 8. Cisco's Motion to Transfer does not take a position on whether the Texas and North Carolina servers contain potentially relevant evidence. Neither party contests that SSL's evidence is located in Maryland and Virginia, not in Massachusetts or Texas. *See* (Dkt. No. 23 at 13; Dkt. No. 25 at 19).

Cisco's Motion to Transfer simultaneously urges the Court to focus on "the physical location of documents and evidence" while arguing that the EDCS documents stored on Cisco's servers should be imputed to Cisco's Massachusetts office because employees can remotely access them in Massachusetts. However, Cisco admits that the EDCS documents be accessed "in

---

[3] The Davis and Goldman declarations go on to say: "Employees also have the ability to store documents locally on their hard drives. Any documents saved locally by [Massachusetts-based Cisco employees] are located in Boxborough, Massachusetts." However, neither declaration states that any documents are in fact saved locally, only that employees "have the ability" to do so. To the extent documents are in fact saved locally, neither declaration represents that any such documents are relevant to this case.

any of Cisco's offices," including, presumably, its offices in Texas. More importantly, the Federal Circuit has emphasized that the physical location of evidence remains an important consideration in the venue analysis irrespective of the ease with which it can be remotely accessed; else this factor would be "superfluous." *See In re Genentech*, 566 F.3d at 1345.

Accordingly, Cisco has not shown that any relevant documentary evidence is located in Massachusetts. Instead, Cisco's declarations show that the EDCS evidence is stored on its servers in San Jose, California. Moreover, the Black Declaration states that "revenue information" is stored on Cisco's server in Richardson, Texas and various documents including "contracts" are stored on Cisco's server in Allen, Texas.[4] Cisco's Motion to Transfer is silent on question of whether the evidence stored on its Texas servers is relevant to this case, but it is reasonable to assume that some discoverable information exists among "revenue information" and "contracts."

Cisco's evidence housed in California—which appears to constitute the most consequential corpus of evidence for purposes of the venue analysis—is more proximate to Texas than to Massachusetts and is therefore more readily accessible in this district. SSL's evidence is more proximate to Massachusetts than to Texas, but Cisco's Motion correctly argues that "the bulk of the relevant evidence usually comes from the accused infringer" so the Court gives less weight to the location of SSL's evidence. *See In re Genentech*, 566 F.3d at 1345. Finally, Cisco identifies seemingly relevant classes of documents housed in its Eastern District of Texas servers. Any such evidence is, of course, more accessible in this District than in Massachusetts. Cisco offers no proof that any evidence is actually located in Massachusetts. Accordingly, the Court finds that the relevant sources of proof are more readily accessible in the

---

[4] Both offices are located in Collin County in the Eastern District of Texas.

Eastern District of Texas than in the District of Massachusetts; this factor weighs against transfer.

*b. Cost of Attendance for Willing Witnesses*

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). In assessing this factor, the Court considers the convenience of the party and non-party witnesses. The convenience of the non-party witnesses carries the greatest weight in the analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012). "A district court should [also] assess the relevance and materiality of the information the witness may provide" but should not require the movant to identify "key witnesses," or show "that the potential witness has more than relevant and material information . . . ." *In re Genentech*, 566 at 1343–44.

SSL does not appear to contest the following factual assertions made in Cisco's Motion to transfer: (1) "Cisco is not aware of any party or non-party witnesses located in Texas"; (2) "it appears that all of Cisco's witnesses are located in the District of Massachusetts"; and (3) "SSL and all identified third party witnesses are located in Maryland or Virginia." (Dkt. No. 23 at 14–16; Dkt. No. 25 at 15–16).

SSL does argue, however, that the Eastern District of Texas is a more convenient forum for the identified third party witnesses, none of whom are located in Massachusetts. (Dkt. No. 25 at 15–16). *First*, SSL argues that the same third party witnesses identified in Cisco's Motion to Transfer (the named inventors of the '011 Patent and representatives of the predecessor company to SSL) were willing and able to travel to this district for the prior Citrix Litigation. *Second*, SSL

contends that third party witnesses would incur lower travel and lodging costs travelling to rural East Texas than they would traveling to urban Massachusetts, notwithstanding the witnesses' closer physical proximity to Massachusetts.

Although the Court does not discount the relevance of SSL's arguments, they are not sufficient to overcome the uncontested facts: no witnesses are located in this district, Cisco's witnesses are located in Massachusetts, and identified third party witnesses reside closer to Massachusetts that to Texas. *See In re Volkswagen I*, 371 F.3d at 204–205 ("inconvenience to witnesses increases in direct relationship to the additional distance to be traveled"). Accordingly, this factor weighs in favor of transfer.

### c. Availability of Compulsory Process to Secure the Attendance of Witnesses

The Court may command a person who "resides, is employed, or regularly transacts business in person" in Texas to attend trial in Marshall if she "would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). The Court also may command a person to attend a deposition at a location "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45 (a)(2); *see id.* (c)(1)(A), (d)(3)(a). Party witnesses normally do not require compulsory process. The Court's analysis of this factor therefore focuses on third-party witnesses. *See In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337–38 (Fed. Cir. 2009).

Cisco's Motion to Transfer admits that "all [third party witnesses] are in Maryland or Virginia and thus are not subject to the subpoena power of either the transferor or transferee forum." (Dkt. No. 23 at 14). However, Cisco reiterates its argument that third party witnesses will be more inconvenienced traveling to Texas than they would traveling to Massachusetts. (*Id.*)

This factor does not focus on witness convenience; the issue of convenience was considered and addressed *supra*.

Because neither this district nor the proposed transferee district would have subpoena power over third party witnesses, this factor is neutral.

> *d. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive*

The parties hotly contest this factor, focusing on the effect of the prior Citrix Litigation. SSL argues that the Citrix Litigation overlaps significantly with the present case: "this Court has devoted substantial time and resources to become knowledgeable and familiar with SSL and its '011 Patent family, and issues concerning that Patent's interpretation, validity, infringement, and file/reexamination history." (Dkt. No. 25 at 12). SSL contends this Court's familiarity with the '011 Patent from the Citrix Litigation is "alone" sufficient to deny transfer under controlling precedent. (Dkt. No. 25 at 11–12); *In re Vicor Corp.*, 493 Fed. Appx. 59, 61 (Fed. Cir. 2012) ("We have held that the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice. . . . Judicial economy may be served even when two related cases before the same court may not involve the same defendants and accused products.") (citations omitted); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010) ("it is entirely within the district court's discretion to conclude that in a given case the § 1404(a) factors of public interest or judicial economy can be of 'paramount consideration,' and as long as there is plausible support of record for that conclusion we will not second guess such a determination, even if the convenience factors call for a different result") (citations omitted).

Cisco takes the position that any judicial economy benefits from the Citrix Litigation are insignificant: "it has been three years since the trial in the *Citrix* case. That trial involved

different products than this case, and thus none of the evidence regarding the question of infringement will overlap. It has been almost four years since claim construction in the *Citrix* case was completed by Judge Ward." (Dkt. No. 23 at 18). Cisco also contests the applicability of SSL's cases—the *Vicor*, *Vistaprint*, and *Dell*[5] opinions all involved co-pending litigation, not prior litigation that had concluded. (Dkt. No. 31 at 2–3). Accordingly, Cisco argues "[a]ny judicial efficiency gained from SSL's prior lawsuit in this District is negligible." (Dkt. No. 23 at 18).

Judicial economy is not "alone" dispositive of the venue question in this case; the Citrix litigation is not co-pending and it involved different accused products. However, judicial economy unambiguously weighs against transfer. Over the course of the Citrix Litigation this Court acquired familiarity with the technology of the '011 Patent and construed its claims. Moreover, although the defendant and accused products are different in this case than in the Citrix Litigation, there remain technical and legal commonalities between the two cases pertinent to issues such as infringement and validity. This Court's familiarity with the Citrix Litigation, acquired over approximately seven years, will have no small effect on the efficiency and expedience with which this Court can manage the present case. Accordingly, this factor weighs against transfer.

### 3. Public Interest Factors

#### *a. Local Interest in Having Localized Interests Decided at Home*

Cisco cites no ties between SSL and either Texas or Massachusetts. (Dkt. No. 23 at 19). Likewise, Cisco cites no connection between any third party witness and either Texas or Massachusetts. (*Id.*) As previously discussed, Cisco has offices in both the District of

---

[5] *In re Dell Inc.*, 600 Fed. Appx. 729 (Fed. Cir. 2015) (unpublished).

Massachusetts and the Eastern District of Texas. Cisco admits its products are sold throughout the United States. (*Id.*)

The only local interest Cisco identifies in Massachusetts is the presence of Cisco personnel who "designed and developed" the accused products. (*Id.*)[6] The Court has already taken into account the location of relevant Cisco personnel when assessing the convenience of witnesses. However, the fact that the product was originally designed and developed in Massachusetts provides a connection to that forum and weighs slightly in favor of transfer.

### b. Administrative Difficulties Flowing From Court Congestion

Cisco's Motion to Transfer observes: "[t]he most recent Federal Judicial Caseload Statistics show that the median time to resolve a case is 9.2 months in the District of Massachusetts and 9.0 months in the Eastern District of Texas, and the median time to trial in civil cases is slightly longer in the District of Massachusetts (27.1 months) compared with the Eastern District of Texas (25.9 months)." (Dkt. No. 23 at 18–19). Cisco's statistics cover the twelve-month period ending March 31, 2014. (Dkt. No. 23-13). SSL argues that more recent statistics, from the twelve-month period ending March 31, 2015, show "the median time from filing to a civil trial in Massachusetts was 29.1 months, with a median average of 30.1 months over the last six years. In this Court, it was only 22.9 months, with a median average of 23.2 months over the last six years." (Dkt. No. 25 at 19).

Irrespective of the statistic used, it is clear that the time to trial in this District is somewhat shorter than in the District of Massachusetts. However, the difference is not large, and this factor therefore weighs only slightly against transfer.

---

[6] Cisco also represents that "documents relevant to this dispute" are located in Massachusetts, but again cites no evidence to support this contention.

> *c. Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Neither party cites anything relevant to this factor (other than this Court's familiarity with the Citrix Litigation, which has already been accounted for). (Dkt. No. 23 at 19; Dkt. No. 25 at 20). Accordingly, this factor is neutral.

## C. CONCLUSION

A motion to transfer venue should only be granted upon a showing that one venue is "clearly more convenient" than another. *In re Nintendo Co.*, 589 F.3d at 1197; *In re Genentech*, 566 F.3d at 1342. Here, two factors favor transfer (one only slightly), three factors oppose transfer (one only slightly), and two are neutral. After weighing the evidence as a whole, the Court finds Cisco has not shown that the District of Massachusetts would be a "clearly more convenient" forum for this litigation. Accordingly, Cisco's Motion to Transfer is **DENIED**.

## III. MOTION TO COMPEL

Cisco moves to compel SSL to supplement its Patent Local Rule 3-1 infringement contentions, arguing that the disclosures in SSL's Pat. L.R. 3-1(c) chart are insufficient. (Dkt. No. 51). Cisco also moves to significantly extend[7] all deadlines in the Docket Control Order to account for SSL's allegedly deficient disclosures. For the following reasons, the Court holds SSL's disclosures are sufficient under the Local Rules and denies Cisco's requested relief.

## A. APPLICABLE LAW

The local rules of this district require a party claiming patent infringement to serve on all parties "[a] chart identifying specifically where each element of each asserted claim is found

---

[7] "Cisco requests that the dates in DCO be extended by the equivalent amount of time that passed from the original service of the deficient Infringement Contentions on July 23, 2015 to the date that SSL provides the amended Infringement Contentions." (Dkt. No. 51 at 18).

within each Accused Instrumentality." Pat. L.R. 3-1(c). The purpose of Rule 3-1 is to "require parties to crystallize their theories of the case early in the litigation so as to prevent the 'shifting sands' approach to claim construction." *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015) (citations omitted).

Rule 3-1 contentions "must be reasonably precise and detailed . . . to provide a defendant with adequate notice of the plaintiff's theories of infringement, [but] they need not meet the level of detail required, for example, on a motion for summary judgment on the issue of infringement." *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 699 (E.D. Tex. 2014). "The Rules do not require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case. . . . Infringement contentions are not intended to require a party to set forth a *prima facie* case of infringement and evidence in support thereof." *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, Case No. 6:09-cv-116, Dkt. No. 122 at 4 (E.D. Tex. Jan. 21, 2010). "Infringement contentions are not intended to act as a forum for argument about the substantive issues but rather serve the purpose of providing notice to the Defendants of infringement theories beyond the mere language of the patent claim." *Motion Games, LLC v. Nintendo Co.*, Case No. 6:12-cv-878, Dkt. No. 303 at 4 (E.D. Tex. Apr. 16, 2015) (citing *Linex Techs. Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 713 (E.D. Tex. 2008)).

**B. ANALYSIS**

    **1. Patent Local Rule 3-1(g)**

The parties contest the import and applicability of Patent Local Rule 3-1(g). At the outset, the Court notes that Rule 3-1(g) is inapplicable to the parties' present dispute.

Patent Local Rule 3-1(g) is not, strictly speaking, a Local Rule of the Eastern District of Texas. Instead, Rule 3-1(g) is an addendum to the Local Rules provided in the Sample Discovery

Order for Patent Cases Assigned to Judge Rodney Gilstrap and Judge Roy Payne.[8] Rule 3-1(g) is present in the Agreed Discovery Order entered in this case:

> **P.R. 3-1(g):** If a party claiming patent infringement asserts that a claim element is a software limitation, the party need not comply with P.R. 3-1 for those claim elements until 30 days after source code for each Accused Instrumentality is produced by the opposing party. Thereafter, the party claiming patent infringement shall identify, on an element-by-element basis for each asserted claim, what source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements.

(Dkt. No. 42 at 2–4).

Rule 3-1(g) is designed to ameliorate the "unique challenges" present in some software cases, in which a plaintiff requires access to source code for the accused products in order to comply with its disclosure obligations under Rule 3-1. *See Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005). To invoke Rule 3-1(g), a party must "assert[] that a claim element is a software limitation" in some overt way, preferably in its infringement contentions. The party invoking Rule 3-1(g) need not comply with Rule 3-1 for the limitation(s) that it has asserted are software limitations, but must supplement its infringement contentions within 30 days of the production of source code to make its contentions compliant.

Here, SSL did not invoke rule 3-1(g) when it served its infringement contentions, and it argues it "has already provided contentions that comply with P.R. 3-1." (Dkt. No. 59 at 5). Moreover, Cisco's source code appears to have been available since September 30, so the 30-day deadline has long since lapsed. (Dkt. No. 54 at 18 n.48). Accordingly, Rule 3-1(g) is not applicable.[9]

---

[8] Available at: http://www.txed.uscourts.gov/cgi-bin/view_document.cgi?document=22243

[9] SSL is not necessarily precluded from amending its infringement contentions to cite source code. Although SSL cannot amend its contentions as of right pursuant to Rule 3-1(g), it may nevertheless seek leave of Court to amend by showing good cause. Pat. L.R. 3-6(b).

### 2. SSL's Infringement Contention Chart

Because Rule 3-1(g) does not apply, the only remaining question is whether SSL's contentions comply with the disclosure requirements of Pat. L.R. 3-1. Cisco argues there are two classes of deficiencies in SSL's contentions. Cisco previously requested clarification of these alleged deficiencies, and SSL responded by stating its contentions are sufficiently detailed and complete. (Dkt. No. 51 at 6).

#### a. *Shim and Session Key Limitations*

*First*, Cisco argues "SSL has not provided any explanation or theory of infringement for a key limitation that appears in every Asserted Claim: that a 'shim' must be arranged to 'cause' the generation of a 'session key', among other things." (*Id.* at 4). Cisco says SSL's contentions rely on nothing more than "parrot[ing] back the claim language" and "six pages of unexplained block quotes." (*Id.* at 5). According to Cisco, "There is a total absence of explanation or analysis of how any alleged 'shim' generates a 'session key' in response to intercepting function calls and requests for service." (*Id.*).

In some circumstances it may be necessary to supply analysis or narrative to provide the accused infringer with sufficient notice of the plaintiff's infringement theories, but that is not the case here. The evidence cited in SSL's contentions speaks for itself by repeatedly identifying a "shim" and a "session key" by name; there is no ambiguity about which structures SSL contends satisfy these claim elements. *See, e.g.* (Dkt. No. 51-3 at 2–7) (cited evidence for this limitation refers to a "shim" at least eleven times); (Dkt. No. 51-5 at 8–58) (cited evidence for this limitation refers to a "session key" at least five times).

Ultimately, Cisco's quarrel is about the substance of SSL's infringement theory, not the adequacy if its disclosure: "Cisco explained to SSL, the 'session key' generated and used in

Cisco's Accused Instrumentalities is generated long before any alleged 'shims' have any involvement or function in establishing a virtual private network, and so there can be no causal connection between any alleged 'shim' and the generation of a 'session key.'" (Dkt. No. 51 at 6). But infringement contentions "are not meant to provide a forum for litigation of the substantive issues." *Linex Techs.*, 628 F. Supp. 2d at 713. Cisco's disagreements with the factual accuracy or legal correctness of SSL's theories have no bearing on the sufficiency of SSL's contentions. SSL's contentions identify the structures in the accused products that it contends satisfy these claim elements. Whether Cisco believes this constitutes a "viable infringement theory" is of no moment.

      b. *Multi-Tier Virtual Private Network*

*Second*, Cisco argues that SSL has not identified the structures corresponding to the three layers or tiers of the claimed "multi-tier virtual private network": "(1) 'applications level encryption and authentication software' or an 'applications program' (the highest layer); (2) 'lower level set of communications drivers' (the lowest layer); and (3) a 'shim' (the middle layer that sits between the other two layers)." (Dkt. No. 51 at 7). Here, Cisco's dispute with SSL is transparently one of substance and not of disclosure—Cisco states that SSL has identified the same structures as satisfying multiple limitations and argues that this infringement theory is not legally viable. (*Id.* at 15) ("SSL appears to be alleging that the 'Transport Layer Security' ('TLS') protocol somehow satisfies both the required highest layer 'applications' software and the claim's middle layer 'shim.' . . . SSL also appears to be generally alleging that a so-called 'virtual adaptor driver' can somehow be both the alleged middle layer 'shim' and the lower layer 'set of communications drivers.'"). Cisco argues this theory "makes no sense" because "the claims require different things at different layers." (*Id.*).

Whether the same structure can satisfy multiple limitations is a substantive legal issue—that Cisco can articulate its substantive disagreements with SSL's theory demonstrates that Cisco is on notice of SSL's theory "beyond the mere language of the patent claim." *Motion Games*, Dkt. No. 303 at 4. This is what the Local Rules require.

**C. CONCLUSION**

The Court finds that SSL's contentions comply with the disclosure requirements of Patent Local Rule 3-1. Accordingly, Cisco's Motion to Compel is **DENIED**.

**SIGNED this 24th day of February, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE